United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHERYL M. COLDIRON,

       Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

       Defendant.

_____/

No. C 07-00535 CW

ORDER DENYING
PLAINTIFF'S
MOTION FOR
SUMMARY JUDGMENT
AND GRANTING
DEFENDANT'S
CROSS-MOTION FOR
SUMMARY JUDGMENT

    Plaintiff Cheryl M. Coldiron moves for summary judgment.

Defendant Michael J. Astrue in his capacity as Commissioner of the

Social Security Administration opposes the motion and cross-moves

for summary judgment.  Having considered all of the papers filed by

the parties, the Court DENIES Plaintiff's motion for summary

judgment and GRANTS Defendant's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

    This is the second time that Plaintiff has sought this Court's

judicial review of the Commissioner's final decision denying her

disability claim.  On October 7, 2003, the Court issued an order

remanding the case and directing the Administrative Law Judge (ALJ)

to reevaluate the evidence.   Administrative Record (AR) 717.
Plaintiff disputes the ALJ's subsequent determination of non-disability.

On June 3, 1999, Plaintiff applied for disability payments under Title II of the Social Security Act (SSA), alleging disability beginning on August 25, 1995.  AR 109-11.  The application was denied initially and on reconsideration.  AR 84-93. On October 31, 2001, after a hearing, the ALJ, Cathryn Lazuran issued a decision finding Plaintiff was not disabled.  AR 22-31. This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  AR 8-9.  Plaintiff appealed to this Court and on August 11, 2003 the Court issued an order vacating the ALJ's decision.  The parties stipulated to remanding the case to Defendant for further administrative proceedings.  AR 717-22.  In particular, the parties stipulated that the ALJ would reevaluate the treating opinion of Wladislaw V. Ellis, M.D.; the examining source opinions of Steven D. Feinberg, M.D., and Matthew B. Zwerling, M.D.; the non-examining source opinion; the lay evidence of Plaintiff's spouse, Alan Coldiron; and Plaintiff's residual functional capacity (RFC).  AR 717.

On June 22, 2005, Cathryn Lazuran, the same ALJ who had made the 2001 determination of non-disability, again denied Plaintiff's disability claim.  AR 697-711, 926-83.  The ALJ found that Plaintiff did not qualify for a period of disability under 42 U.S.C. § 416, and was not entitled to Social Security Disability Insurance Benefits (SSDIB) under 42 U.S.C. § 423, because she could perform a significant number of jobs in the national economy.  AR

2

710-11.  On November 27, 2006, the Appeals Council denied
Plaintiff's request for further review, determining that the ALJ
had complied sufficiently with the Court's order.  AR 678-81.
Thus, the ALJ's decision became Defendant's final decision.
Plaintiff then commenced a second civil action, pursuant to 42
U.S.C. § 405(g), which the Court related to Plaintiff's 2002
action.  Pl.'s Compl. 1-2; Related Case Order 1.  Plaintiff now
moves for summary judgment.  Defendant opposes the motion and
cross-moves for summary judgment.

FACTUAL BACKGROUND

I.   Plaintiff's Personal History

     Plaintiff was born on October 6, 1955.  She graduated from
college and received a Master of Business Administration (MBA)
degree in 1984.  AR 40-43.  From 1982 through 1995, Plaintiff
worked as both a software sales person and software sales
supervisor.  AR 45-46.  On January 13, 1995, at work, Plaintiff
injured her right arm and shoulder when she used them to brace a
falling filing cabinet.  AR 702.  Plaintiff has not been employed
since August, 1995.  AR 932.  Plaintiff was originally right-
handed, but after her injury she taught herself to write with her
left hand.  AR 932. Plaintiff has two children, who were sixteen
and thirteen years old at the time of her February 12, 2001,
administrative hearing.  AR 42.  In 2001, a Workers' Compensation
judge gave Plaintiff a permanent disability rating of thirty-three
and one-third percent, based on Dr. Feinberg's assessment that

United States District Court
For the Northern District of California

Plaintiff's disability was permanent and stationary.[1]  AR 654, 965-66.  Plaintiff's date last insured (DLI)--the date on or before which Plaintiff was required to establish the onset of disability--was December 31, 2001.  AR 933.

II.  Plaintiff's Medical History

Plaintiff's medical record comprises approximately 300 pages. AR 889.  The administrative record includes medical reports and records from at least sixteen physicians, from the years 1995 through 2004.  AR 3-7.

Dr. Ellis was Plaintiff's primary treating physician[2] from April, 1996 to July, 2000.  AR 392-481, 575-94.  In April, 1996, Dr. Ellis diagnosed Plaintiff with thoracic outlet syndrome.[3]  AR 479.  From April, 1996 through May 8, 2000, Dr. Ellis treated Plaintiff with brachial plexus nerve blocks,[4] administering

---

[1]After a Workers' Compensation claimant has reached maximum improvement, or his or her condition has been stable for a reasonable period of time, the disability is deemed "permanent and stationary."  Leboeuf v. Workers' Comp. Appeals Bd., 34 Cal. 3d 234, 238 (1983).  Then, a Workers' Compensation judge assesses a claimant's diminished future earning capacity based on a statutory formula.  Calif. Law of Employee Injuries & Workers' Comp. § 8.01 (2007).  In Plaintiff's case, the Workers' Compensation judge found that her future earning capacity was reduced by one-third, as a result of her permanent disability.

[2]Prior to her injury, Plaintiff received her primary care from Lydia Mertens, M.D., and she continues to visit Dr. Mertens for bi-monthly check-ups and monitoring of her medications.  AR 248-49.

[3]Thoracic outlet syndrome is the general term for a group of conditions caused by compression of nerves, blood vessels, or both, at the base of the neck.  Stedman's Medical Dictionary, 1916 (28th ed. 2006) (Stedman's).

[4]Brachial plexus nerve blocks involve injection of a local anesthetic into the major nerve network serving the upper limbs of the body.  Stedman's at 230, 1513.

4

injections approximately every two weeks.  AR 608-12.  Plaintiff discontinued her treatment with Dr. Ellis after the Workers' Compensation judge referred her to Dr. Feinberg and asked her to stop seeing Dr. Ellis.  AR 962.

Dr. Feinberg, a certified physical medicine and rehabilitation specialist, is not Plaintiff's treating physician,[5] but she saw him on at least three occasions from 2000 to 2001.  AR 606-18, 665.  At the request of the Workers' Compensation judge, Dr. Feinberg examined Plaintiff on May 8, 2000.  AR 606.  He diagnosed Plaintiff with cervical spondylosis[6] and chronic right shoulder pain syndrome.  AR 615.  Dr. Feinberg examined Plaintiff again in January, 2001.  AR 614.  During this examination, Plaintiff described continued pain in her neck, right upper back, shoulder and arm and she self-limited her right shoulder abduction to ninety degrees.  AR 614-15.  Dr. Feinberg's examination revealed that Plaintiff actually had full range of shoulder motion, with full internal rotation and full extension.  AR 615.  He noted that Plaintiff demonstrated diffuse discomfort to palpation and stronger grip strength on the left than on the right, muscle testing was otherwise normal, sensation was intact and reflexes were symmetrical.  Id.  Dr. Feinberg ruled out psychological factors as

_____

[5]Dr. Feinberg did treat Plaintiff during the time that she stopped seeing Dr. Ellis.  But, in January, 2002, Plaintiff recommended treatment with Dr. Ellis, and in May, 2002, Plaintiff's attorney confirmed that Dr. Ellis is Plaintiff's treating physician for her impairments.  AR 665, 857.

[6]Cervical spondylosis is a neck injury, a non-specific, degenerative lesion of the cervical vertebrae, intervertebral discs, and surrounding soft tissue.  Stedman's at 1813.

United States District Court
For the Northern District of California

affecting Plaintiff's physical condition.  <u>Id.</u>  He determined that Plaintiff was precluded from work above the right shoulder level, forceful or repetitive work with her right upper arm, or any heavy lifting.  AR 616.  He also described Plaintiff's subjective factors of disability as slight to moderate pain.  AR 615.

Dr. Feinberg referred Plaintiff to Peter Edgelow, M.A., P.T., a physical therapist and thoracic outlet specialist.  AR 613.  Mr. Edgelow treated Plaintiff from July 10, 2000 through February 9, 2001.  AR 595, 619-28, 963.  On July 10, 2000, he noted, Plaintiff reported that her migraines had stopped and for the previous two years she had been fairly stable with the use of medication.  AR 624.  Plaintiff's regularly treating physical therapist is Edward Rosen, P.T.  AR 605.  Beginning October 4, 1995, Mr. Rosen began treating Plaintiff on a weekly basis.  AR 482-556, 836.  Plaintiff continued physical therapy with Mr. Rosen during the time she was treated by Mr. Edgelow.  AR 600.  Mr. Rosen continued treating Plaintiff until at least January 22, 2003, when he concluded that Plaintiff was "totally disabled."  AR 835.

Plaintiff underwent a psychological examination as part of her Workers' Compensation claim.  AR 936-37.  Dr. Feinberg referred Plaintiff to a psychiatrist, Dr. Charles Casella, who examined her on September 19, 2000.  AR 614.  According to Dr. Feinberg's notes, Dr. Casella found no "gross psychopathology."  <u>Id.</u>  The ALJ requested Dr. Casella's full report,[7] but did not receive it from

_____

[7]The record does not clearly link Dr. Casella's report to the psychological examination that the ALJ requested during the hearing.  Plaintiff could not remember the date of the examination or the name of the psychologist.  AR 936.  However, the ALJ

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiff or her attorney.  AR 703, 936-37.  In a letter dated December 27, 2004, Plaintiff's attorney wrote that he had "no success" obtaining the report from Plaintiff's psychological examination, but he believed that Plaintiff qualified as disabled based on Dr. Feinberg's "comprehensive report."  AR 905.

On June 17, 2003, Plaintiff began treatment with a marriage and family therapist, Patricia Britton, M.A., M.F.A.  AR 935.  Ms. Britton reported that Plaintiff had "reactive depression," but did not note any functional limitations resulting from mental impairment.  AR 903-930.  Ms. Britton's counseling notes indicated that therapy improved Plaintiff's symptoms of pain and depression. Id.  These notes also indicated that Plaintiff began taking courses toward a teaching credential in late 2004 and expressed a desire to return to the "world of work."  AR 919-20.

On January 5, 1998, Bruce T. Adornato, M.D., a neurologist, examined Plaintiff at the request of the Workers' Compensation judge.  AR 610.  Dr. Adornato disagreed with the diagnosis of thoracic outlet syndrome and found no "objective findings to support [Plaintiff's] subjective complaints."  AR 314.  Dr. Adornato also viewed surveillance videotapes of Plaintiff,[8] taken

---

referenced only one existing psychological examination conducted in relation to Plaintiff's Workers' Compensation claim.  AR 703.

[8]In 1999, Dr. Adornato reviewed three surveillance videotapes of Plaintiff, dated October 25, 1997, November 12, 1998 and November 19, 1998.  AR 314.  Because he did this at the request of the Division of Workers' Compensation, this footage was presumably gathered by that agency in connection with Plaintiff's Workers' Compensation claim.  In 2000, Dr. Feinberg viewed the November, 1998 videotapes and concluded that they did "not indicate much other than that [Plaintiff] was able to be out and about during the day," and did not show her doing much with her right arm.  AR 612.

7

United States District Court
For the Northern District of California

from October, 1997 through November, 1998, and noted that they "did not demonstrate any limitation of her spontaneous movement" and instead showed that Plaintiff had normal use of her right arm in a variety of conditions. AR 314-17. He concluded that the tapes confirmed his clinical impression that it was "medically unlikely" that Plaintiff suffered from "a disability, as she describes." AR 315. Dr. Adornato also commented that Dr. Ellis's treatment method of injecting brachial plexus nerve blocks into Plaintiff's shoulder on a regular basis was "well outside the mainstream of medical care." AR 319. Dr. Adornato questioned Dr. Ellis's "placebo therapy" of relying on Plaintiff's subjective statements about her symptoms, without objective clinical evidence for his diagnosis of thoracic outlet syndrome. AR 320.

On July 1, 1998, Eugene W. Wolf, M.D., an orthopedist, examined Plaintiff at the request of the Division of Workers' Compensation and Plaintiff's employer. AR 610. Dr. Wolf found no objective evidence of Plaintiff's disability, but rather an "exaggeration" and "amplification" of her subjective symptoms. AR 285-311. He opined that Plaintiff's disability was created by Dr. Ellis's treatment methods. AR 310. Dr. Wolf's report was discounted in Plaintiff's 2001 Workers' Compensation disability assessment. AR 610.

Dr. Zwerling, an orthopedic surgeon, examined Plaintiff on several occasions and submitted medical records from December, 1995 through January, 1999. AR 365-80. On July 15, 1999, Dr. Zwerling wrote a summary report, stating that he believed Plaintiff was correctly diagnosed with thoracic outlet syndrome, and opining that

Plaintiff could work an eight hour day if allowed to alter her positions frequently, though she would be precluded from lifting more than ten pounds.  AR 366.  On February 4, 1999, Dr. Zwerling posited a strong "psychologic, psychosomatic component" to Plaintiff's symptoms that could be remedied with long-term counseling, but he did not diagnose a mental impairment.  AR 367-68.  Dr. Zwerling reviewed Plaintiff's medical files and disputed the medical practices of her treating physician, Dr. Ellis, stating that he disagreed with the value of Dr. Ellis's treatment protocol of frequently injecting Plaintiff with nerve-blocking drugs.  <u>Id.</u>

On October 25, 1996, David Bradshaw, M.D., a rehabilitation specialist, examined Plaintiff in regard to a third party matter.[9] AR 608.  Dr. Bradshaw reported that he had examined Plaintiff prior to her shoulder injury in January, 1995, for pre-existing musculoskeletal problems and headaches.  AR 229.  In his October 25, 1996 report, he indicated that Plaintiff's lack of improvement for symptoms that he determined could be remedied with "minimum treatment" suggested psychiatric variables.  AR 229-33.  Dr. Bradshaw did not diagnose a mental impairment.  <u>Id.</u>

On March 30, 2004, Thanh Q. Tran, M.D., conducted a physical examination and neurological evaluation of Plaintiff, at the request of the SSA.  AR 889-95.  Dr. Tran found that Plaintiff had normal ranges of motion except for an inability to raise her right arm above her head.  AR 890.  Plaintiff had full motor strength in

_____

[9]Plaintiff was involved in a lawsuit against the company that manufactured the filing cabinet that had caused her alleged injury. AR 286, 295.  Although it is not explicit in the record, Plaintiff apparently initiated the lawsuit.  AR 668.

all extremities except in her right grip, no atrophy and normal

muscle tone.  Id.  Plaintiff also did "not appear depressed," was

"alert and oriented," with "good comprehension and attention," and

a "good memory."  Id.  Dr. Tran diagnosed Plaintiff with right neck

and shoulder pain and weakness in the right hand "with unclear

etiology."  AR 891.  He stated that, based on Plaintiff's

subjective complaints, she would be unable to work because of

constant right shoulder pain.  Id.  However, Dr. Tran's objective

findings were that Plaintiff had no limitations in walking,

sitting, standing or posture.  Id.

III. Plaintiff's Second Hearing Before the ALJ

     Prior to her second hearing, Plaintiff amended her disability

onset date to January 8, 2001,[10] alleging continuing disability due

to degenerative disc disease and nerve damage to her right side.

AR 701, 783-89.

     On October 26, 2004, Plaintiff, accompanied by her attorney,

Patrick Kelly, appeared before the ALJ at a second hearing and

presented testimony about her daily activities.  AR 969-77.

Plaintiff stated that she was able to dress and groom herself, but

she had retained a housekeeper to do household chores for the past

several years and her husband helped her cook dinner.  AR 972-73.

She shopped for groceries once a week but did not usually carry

bags from the store into the house, and she did some laundry.  AR

973-76.  Each day, she walked for about an hour and did physical

---

[10]Because Case Number 02-04903 CW was consolidated with Case
Number 07-00535 CW, the Court reviews the record from the original
claimed onset date of August 25, 1995, through the DLI, December
31, 2001.

United States District Court
For the Northern District of California

therapy exercises for approximately an hour.  AR 974.  She took

OxyContin, a prescription pain medication, that she claimed made

her "fuzzy headed."  Id.  She also took Prozac, Elavil,[11] and

Neurontin.[12]  AR 965.  Plaintiff could drive a maximum of twenty

minutes; when she needed to go further for a doctor's appointment,

her husband took the day off from work to drive her.  AR 975.  She

and her family flew to Mexico for a one week vacation every summer.

Id.  She used a computer for e-mail ten to fifteen minutes per day,

paid bills online, and read for a hobby for about one to two hours

per day.  AR 975-76.

Plaintiff's spouse, Alan B. Coldiron, was not at the hearing,

but on June 18, 1999, he submitted an assessment of Plaintiff's

daily activities and in July, 2002, he submitted an observational

statement.  AR 144-49, 667-71.  Mr. Coldiron opined that

Plaintiff's daily activities were affected by her impairments: she

took at least four pain medications daily, and would need to take

these medications for the rest of her life.  AR 667-71.  He

reported that Plaintiff read, went to movies, took daily walks, ran

errands, and took care of their children before school.  AR 144,

147.  Plaintiff was "moody" two to three days a week, but managed

her mood with medication.  AR 147.  Mr. Coldiron indicated that Dr.

Wolff only examined Plaintiff for twelve minutes and his report was

---

[11]Prozac, also referred to as fluoxetine hydrochloride, and
Elavil, also referred to as amitriptyline, are prescription anti-
depressants.  Physician's Desk Reference 1801 (61st ed. 2007).

[12]Neurontin, also referred to as gabapentin, and OxyContin,
also referred to as oxycodone hydrochloride, are prescription
analgesics, or pain medications.  Id. at 2487, 2703.

United States District Court
For the Northern District of California

thrown out by a Workers' Compensation judge as biased.  AR 667.
Mr. Coldiron also indicated that only one of the Workers'
Compensation surveillance videotapes of Plaintiff that were
interpreted by Dr. Adornato was admitted into evidence at the
Workers' Compensation hearing, and some of the women depicted in
that tape were not Plaintiff.  AR 668.

Stephen P. Davis testified as an impartial vocational expert
(VE).  AR 977-82.  The ALJ's first hypothetical question to the VE
asked:

> assume a person [of Plaintiff's age, education and past
> relevant experience] can lift twenty pounds occasionally
> and less than ten pounds frequently.  Can stand, walk and
> sit without limit.  Can occasionally climb, stoop and
> reach with the right dominant arm.  And has no limitation
> regarding use of the left arm.  Is limited regarding
> pushing and pulling to twenty pounds occasionally and
> should not crawl. . . . Would there be . . . jobs the
> person could do?

AR 979-80.  Mr. Davis testified that this hypothetical person could
not perform the "light duty" requirements of Plaintiff's former
job, but could do some "sedentary" work.  AR 979-80.  The VE listed
three jobs this hypothetical person could perform: credit
authorizer, with 186,000 jobs existing nationally and 5,400 in
California; collections clerk, with 247,200 jobs nationally and
19,000 in California; and telemarketer, with 989,700 jobs
nationally and 16,600 in California.  AR 980.  The second
hypothetical included further limitations, such that the person
would only be able to lift ten pounds occasionally and would need
the option to sit or stand.  AR 980.  The VE responded that this
hypothetical person would also be able to do the three jobs that he
had previously identified.  Id.

United States District Court
For the Northern District of California

Board-certified neurologist and clinical neurophysiologist Roger Bertoldi, M.D., testified as an impartial medical expert at the 2004 hearing.  AR 933-61.  Dr. Bertoldi testified that the medical evidence indicated that Plaintiff had degenerative disc disease of the cervical spine, right arm strain and headaches, but that Plaintiff's impairments did not meet or equal the criteria of any listed impairment.  AR 938, 946.  Dr. Bertoldi testified that there were no conflicts in the medical record, except for the opinions of Dr. Ellis.  AR 937.  Dr. Bertoldi saw a conflict between Dr. Ellis's treatment methods and standard procedures used in the medical community.  Id.  Dr. Bertoldi stated that Dr. Ellis's frequent injections of nerve blocks into Plaintiff's shoulder was not a conventional treatment and that his credentials were suspect, given his treatment methods.  AR 949-50.  Dr. Bertoldi explained that Dr. Ellis represented himself as a neuropsychiatrist, but that psychiatrists do not administer nerve blocks.  Id.  Dr. Bertoldi was reluctant to characterize Plaintiff's chronic pain as malingering, instead opining that it might be attention seeking behavior.  AR 952.

IV.  The ALJ's Disability Determination

In her 2005 decision, the ALJ conducted the five-step evaluation process[13] outlined in 20 C.F.R. § 404.1520, and found

_____

[13]In order to make a SSDIB determination under Title II, the ALJ must apply a sequential five-step evaluation process to the disability claim pursuant to 20 C.F.R. § 404.1520: (1) is the claimant engaged in substantial gainful work activity; (2) if not, does the claimant have a severe impairment, or combination of impairments; (3) if so, are the impairments listed in, or as severe as those listed in Appendix 1; (4) if not, do the impairments preclude the claimant from performing past relevant work; and

United States District Court
For the Northern District of California

that Plaintiff was not disabled within the meaning of the SSA on or prior to her DLI on December 31, 2001.  AR 701.  At step one of the five-part analysis, the ALJ found that Plaintiff had not worked since the alleged disability onset date.  AR 710.

At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine, right arm strain, and headaches were severe within the meaning of the Regulations.  Id.  As a component of the step two analysis, the ALJ examined the record and found no medically verifiable evidence that Plaintiff suffered from a severe mental impairment on or prior to December, 2001.  AR 703.  The ALJ analyzed the treatment notes from Ms. Britton, Plaintiff's therapist from 2003 to 2004, and found no reference to mental impairment prior to December, 2001.  Id.  The ALJ also noted that Dr. Zwerling posited a strong "psychologic, psychosomatic component" to Plaintiff's symptoms, but that he did not clinically diagnose a mental impairment.  Id.  The ALJ discussed Dr. Bradshaw's suggestion of psychiatric variables contributing to Plaintiff's impairment, but found that Dr. Bradshaw's suggestion was not a clinical diagnosis.  Id.

At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically equal any of the impairments listed in Appendix 1 of the Regulations.  AR 710.  In order to make this determination, the ALJ relied on the testimony of the impartial medical expert, Dr. Bertoldi.  AR 703.

_____

(5) if so, is other work precluded?  20 C.F.R. § 404.1520(b)-(g).

14

United States District Court
For the Northern District of California

Prior to steps four and five of the analysis, the ALJ weighed the medical and other evidence in the record to assess Plaintiff's residual functional capacity (RFC). AR 704. The ALJ looked at several sources to make the RFC determination, including: the medical information from Dr. Ellis, Plaintiff's regular treating physician; the reports of Drs. Feinberg and Tran; and observational statements from Plaintiff's spouse, Mr. Coldiron. Id. The ALJ also looked at Plaintiff's testimony, explaining that she gave little weight to these statements, because she found Plaintiff's testimony "not entirely credible" in light of the treatment record and Plaintiff's daily activities. AR 704. The ALJ also indicated evidence in the record that detracted from Plaintiff's credibility, including statements from examining physicians, Dr. Adornato and Dr. Wolf. AR 705. The ALJ determined that Plaintiff retained the RFC to lift ten pounds occasionally; stand and walk two hours out of an eight hour day; sit for six hours out of an eight hour day; and occasionally climb, stoop and reach with her right arm. AR 704-708. The ALJ found that Plaintiff had no limitations with the left arm. Id.

At step four of the disability analysis, the ALJ determined that Plaintiff was precluded from working in her past relevant occupation of software sales person. AR 710. The ALJ based this finding on the RFC assessment and the testimony of the VE, Mr. Davis. AR 708.

At step five, the ALJ concluded that Plaintiff was capable of performing sedentary work existing in significant numbers within the national economy. AR 710-711. Here, the ALJ utilized the

Medical-Vocational guidelines, as well as the VE's testimony, to determine that there were thousands of jobs in the national economy that Plaintiff could perform.  AR 709.  Consequently, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the SSA.  AR 710-711.

LEGAL STANDARD

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether an ALJ's decision is supported by substantial evidence, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ.  Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Rather, a court must weigh the evidence that supports the Commissioner's conclusions and that which does not. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be affirmed even when there is evidence on the other side.  Hall v. Sec'y of Health,

**United States District Court**
For the Northern District of California

<u>Educ., & Welfare</u>, 602 F.2d 1372, 1374 (9th Cir. 1979).  The ALJ's decision should also be affirmed when the evidence is susceptible to more than one rational interpretation.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial evidence, the findings of the Commissioner as to any fact shall be conclusive.  42 U.S.C. § 405(g); <u>Vidal v. Harris</u>, 637 F.2d 710, 712 (9th Cir. 1981).

Under the SSDIB section of SSA, disability is defined as an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A).  An individual will be determined to be disabled only if his or her physical or mental impairment is so severe that he or she "is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work."  42 U.S.C. § 423(d)(2)(A).

DISCUSSION

Plaintiff argues that: (1) the ALJ erred in her step two finding that Plaintiff's alleged mental impairment was not severe; (2) the ALJ did not comply with this Court's remand order in making the 2005 determination; (3) the ALJ erred in her step five finding that Plaintiff retained the RFC to perform other work; and (4) the ALJ improperly discounted Plaintiff's allegation that she experienced side-effects from prescription medication and misconstrued Plaintiff's self-reported daily activities.

I.   The ALJ Did Not Err in the Step Two Determination

Plaintiff argues that at the second step of the five-step

sequential inquiry, substantial evidence did not support the ALJ's conclusion that Plaintiff did not have a severe mental impairment.

At step two of the disability determination, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments that "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include: "[u]nderstanding, carrying out, and remembering simple instructions," and "[r]esponding appropriately to supervision, co-workers and usual work situations." 20 C.F.R. § 404.1521(b).

A person claiming disability bears the initial burden of establishing his or her disability. <u>Sanchez v. Sec'y of Health & Human Servs.</u>, 812 F.2d 509, 511 (9th Cir. 1987). One claiming disability must furnish medical and other evidence of its existence. 42 U.S.C. § 423(d)(5)(A). Subjective statements about pain or disability must be backed up by "[o]bjective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques." 42 U.S.C. § 423(d)(5)(A). Further, symptoms alone "are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528. The impairment "must be shown by medically acceptable clinical diagnostic techniques." <u>Id.</u> Moreover, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for disability benefits. <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006).

United States District Court
For the Northern District of California

Here, the ALJ ruled in Plaintiff's favor at step two, finding that her combination of impairments was "severe." AR 703. The ALJ was only required to consider impairments alleged by Plaintiff or about which evidence had been received. See 20 C.F.R. § 404.1528. The ALJ looked at the medical evidence in the administrative record, finding that Plaintiff suffered from severe impairments from degenerative disc disease of the cervical spine, right arm strain, and headaches. Id. It remained Plaintiff's responsibility to establish that she also had a severe mental impairment during the time period for which she claimed disability. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). However, Plaintiff failed to provide evidence of medically determinable functional limitations caused by a mental impairment.

The ALJ properly examined the evidence that would support Plaintiff's claim of depression and inability to concentrate, stemming from severe mental impairment, and found that Plaintiff's claim was not supported by objective medical evidence. The ALJ examined Plaintiff's medical records and noted that Dr. Feinberg, in his January, 2001 medical report, specifically ruled out psychological factors as affecting Plaintiff's physical condition. AR 703. The ALJ also referred to Dr. Feinberg's notation, in September, 2000, that an examining psychiatrist, Dr. Casella, diagnosed Plaintiff with "no gross psychopathology." AR 703. The ALJ explained that, although Dr. Zwerling opined in a 1999 report that Plaintiff's symptoms had a psychosomatic component, the

19

**United States District Court**
For the Northern District of California

physician had not offered this statement as a clinical diagnosis, but merely a personal opinion. AR 368, 703. Lastly, the ALJ looked at a 1996 medical report from Dr. Bradshaw, who neither diagnosed nor purported to diagnose a mental impairment, but instead opined that Plaintiff's symptoms were indicative of psychiatric variables. AR 233, 703. The ALJ properly determined that none of these statements rose to the level of a medically acceptable clinical diagnosis of mental impairment.

The ALJ also looked for evidence that Plaintiff suffered from functional limitations caused by mental impairment, and found none. The ALJ referred to Dr. Tran's finding that Plaintiff had good comprehension, attention and memory. AR 707. She also referred to Ms. Britton's counseling notes, which indicated that Plaintiff's condition was improving with the use of medication, and that Plaintiff did not report any problems with concentration or persistence. AR 706. The ALJ also noted that Ms. Britton's report, created in 2004, was based on a treatment period that began in 2003, nearly two years after Plaintiff's DLI. AR 903-25.

For the foregoing reasons, the ALJ properly found that Plaintiff's self-reported mental impairment was not supported by objective medical evidence in the record.

II.  The ALJ Complied with the Court's Remand Order

Plaintiff asserts that the ALJ's determination was procedurally improper because the ALJ failed to comply with this Court's remand order by not procuring, at step two of the disability determination, a consultive evaluation of Plaintiff's mental status to determine its severity.

United States District Court
For the Northern District of California

Because disability hearings are not adversarial in nature, the ALJ has a special duty in social security cases fully and fairly to develop the record in order to make an informed decision on a claimant's entitlement to disability benefits.  <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).  An ALJ may order a consultive evaluation where the record is ambiguous or devoid of evidence.  20 C.F.R. § 404.1519a.  The ALJ's duty to develop the record is of less importance when a claimant is represented by an attorney.  <u>Ludwig v. Halter</u>, 5 Fed. Appx. 689, 691 (9th Cir. 2001).  The ALJ can fulfill his or her obligation by making a reasonable attempt to obtain medical evidence from the claimant's treating sources.  42 U.S.C. § 423(d)(5)(B).  But the ALJ has "broad latitude" in determining whether to order a consultive evaluation.  <u>Reed v. Massanari</u>, 270 F.3d 838, 842 (9th Cir. 2001).  The ALJ's duty to investigate does not extend to a duty to generate evidence of a disability that is not clearly indicated on the record.  <u>Turner v. Califano</u>, 563 F.2d 669, 671 (5th Cir. 1977); <u>Nisenbaum v. Callahan</u>, 1999 WL 92650 (N.D. Cal.).

The relevant portion of this Court's remand order reads: "If necessary/warranted, the ALJ will obtain medical expert and supplemental vocational expert evidence."  AR 717.  The Appeals Council provided further instructions to the ALJ to obtain additional evidence about Plaintiff's mental impairment, including a "consultive mental status examination with psychological testing," but only "if warranted and available."  AR 721.

The Court's remand order did not compel Defendant to generate an additional medical report.  It merely stated that, if necessary

21

or warranted, the ALJ would obtain an evaluation of Plaintiff's mental status.  Plaintiff misconstrues this language.  Further, the Appeals Council's instructions were in accord with the remand order.

The ALJ supplemented the record by obtaining further information from Plaintiff, both prior to and at the hearing and considered these additional medical records and reports in her 2005 determination.  The ALJ discussed the updated records from Plaintiff's treating physician, Dr. Ellis; a March 30, 2004 Neurological Consultive Examination by Dr. Tran; treatment records from Plaintiff's marriage and family therapist, Ms. Britton; and reports from Dr. Feinberg, who examined Plaintiff in both 2000 and 2001.  AR 703.  Dr. Feinberg's treatment notes explained that an evaluating psychologist, Dr. Charles Casella, examined Plaintiff on September 19, 2000, and ruled out mental impairment.  AR 614, 703. The ALJ requested an existing psychological evaluation, conducted in connection with Plaintiff's Workers' Compensation claim, but Plaintiff's attorney never submitted the report.  AR 936-937.  The ALJ made reasonable attempts to obtain the report.  The ALJ complied with the Court's remand order, which instructed the ALJ to "obtain medical expert and supplemental vocational expert evidence," as necessary, by utilizing both a vocational expert and a medical expert during the October, 2004 hearing.  AR 717.

Plaintiff did not claim a mental disability on either of her applications for disability; on June 3, 1999, she claimed thoracic outlet syndrome and chronic pain, and on November 15, 2002, she claimed degenerative disc disease and nerve damage.  AR 122, 786.

Also, both Plaintiff and her attorney failed to submit valid evidence in support of a possible mental impairment component to her disability claim.  AR 724, 936-937.

It was not the ALJ's duty to generate additional evidence of mental impairment where the record did not establish a medical basis for this claim during the relevant time period, and where a psychological evaluation reportedly found no mental impairment. Accordingly, the Court finds that the ALJ complied with the remand order.

III. The ALJ Did Not Err in the Step Five Determination

Plaintiff contends that the ALJ's step five finding, that Plaintiff was capable of performing work that exists in the national and local economy, was not supported by substantial evidence.  Plaintiff argues first that the ALJ erred by misconstruing reports that included limitations that would preclude Plaintiff from performing two of the three occupations cited by the ALJ in her step-five analysis.  Second, Plaintiff asserts that the ALJ did not sufficiently explain the weight she assigned to the reports of Dr. Tran and Dr. Feinberg.  Plaintiff's third contention is that the testimony of the VE conflicted with the Dictionary of Occupational Titles (DOT).

In step five, the ALJ must demonstrate "that other work exists in significant numbers in the national economy" that the claimant can do, given his or her RFC, age, education and past work experience.  20 C.F.R. § 404.1560(c)(2); Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996).  A claimant's RFC is the most he or she "can still do despite his [or her] limitations," or the claimant's

United States District Court
For the Northern District of California

maximum ability to perform sustained work in an ordinary work setting on a regular and continuing basis, eight hours a day for five days a week.  20 C.F.R. § 404.1545(a)(1).  The ALJ weighs all of the relevant medical and other evidence to make the RFC determination.  20 C.F.R. § 404.1545(a)(3).  Then, the ALJ compares the claimant's RFC and the nature of the impairments to a table of medical vocational guidelines to determine the claimant's ability to perform any gainful work in the national economy.  20 C.F.R. § 404.1520(g); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  "When [the vocational guidelines] do not adequately take into account claimant's abilities and limitations, [they] are to be used only as a framework, and a vocational expert must be consulted" to determine whether substantial gainful work exists for the claimant.  Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).  Hypothetical questions posed by the ALJ to the VE must set out all of the claimant's limitations and restrictions.  Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).  The assumptions in the hypothetical must be supported by the record. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

A.    The ALJ Did Not Err in Her RFC Determination

First, Plaintiff argues that the ALJ's determination that Plaintiff retained the RFC occasionally to reach with her right arm was not consistent with the evidence cited in her decision, specifically the medical reports from Drs. Feinberg and Tran.  The ALJ determined that Plaintiff retained the RFC to lift ten pounds occasionally; stand and walk two hours out of an eight hour day; sit for six hours out of an eight hour day; and occasionally climb,

24

United States District Court
For the Northern District of California

stoop and reach with her right arm.  AR 708.  The ALJ explained that her RFC assessment was based on Dr. Feinberg's opinion that Plaintiff could not perform work with her right arm above shoulder level or repetitively reach with the right arm, and should avoid heavy lifting; Dr. Tran's finding that Plaintiff could only occasionally climb, stoop and reach above her head with her right arm; and Dr. Zwerling's assessment that Plaintiff would require an option to sit or stand.  Id.

The ALJ based her assessment of Plaintiff's RFC on substantial evidence in the record.  In his January, 2001 report, Dr. Feinberg noted that Plaintiff could not perform work above shoulder level with her right arm, and would be precluded from forceful or repetitive work or heavy lifting with that arm.  AR 616.  He explained that, although using her right arm caused her discomfort, Plaintiff actually had a full range of motion.  Id. at 615.  Dr. Tran found that Plaintiff could lift twenty pounds occasionally and less than ten pounds frequently; only occasionally climb, stoop or reach above her head; and never crawl.  AR 889-93.  Dr. Zwerling determined that Plaintiff was not impaired in terms of standing, sitting or walking, but that she would need frequent alterations of position, and could not lift or carry more than ten pounds at a time.  AR 366.  At Plaintiff's 2004 hearing, the medical expert testified that these opinions were consistent with the medical record.  AR 937.  Thus, the ALJ's determination that the reports from Drs. Feinberg and Tran supported a conclusion that Plaintiff could occasionally reach with her right arm was both reasonable and consistent with the record.

United States District Court
For the Northern District of California

B.   The ALJ Properly Assigned and Explained the Weight She
     Applied to the Evidence

Second, Plaintiff argues that the ALJ did not sufficiently explain the weight that she assigned to the reports of Drs. Feinberg and Tran.  Although Plaintiff does not dispute the ALJ's reliance on these reports or the weight assigned to other evidence, she contends that the ALJ used obscure language in assigning weight.

Because of Plaintiff's amended onset date, the ALJ explained that she gave greater weight to the more recent opinions.  AR 708. The ALJ gave primary weight to the opinion of Dr. Feinberg, who examined Plaintiff at least twice between 2000 and 2001.  AR 707. The ALJ found that Dr. Feinberg's 2001 medical assessment was consistent with the medical record as a whole.  The ALJ also assigned some weight to the opinion of Dr. Tran, who provided the most recent assessment of Plaintiff's RFC, and found that it was consistent with Dr. Feinberg's assessment.  AR 708.  Lastly, the ALJ took into account the statement of Dr. Bertoldi, the medical expert who testified at the hearing, that he agreed with the limitations set forth by Dr. Tran.  AR 947-49.

Along with reports from Dr. Feinberg and Dr. Tran, the ALJ also discussed and assigned weight to other evidence in the record. The ALJ explained that she gave little weight to Dr. Zwerling's opinion, that Plaintiff had no sitting, standing or walking impairment, because he saw Plaintiff only on a few occasions before February, 1999.  AR 705-06.  However, the ALJ factored Dr. Zwerling's assessment that Plaintiff required an option to sit or

26

United States District Court
For the Northern District of California

stand into the RFC assessment.  The ALJ also considered Dr. Ellis's opinion that Plaintiff was precluded from work activity, but found that it was neither reliable nor credible in light of the numerous examining physicians who had disagreed with his diagnosis and treatment methods.  AR 706-07.  The ALJ also considered the opinion of Mr. Rosen, Plaintiff's treating physical therapist, that Plaintiff was precluded from work activity.  AR 707.  However, the ALJ explained that because Mr. Rosen was neither an acceptable medical source nor a vocational expert, his opinion was not given weight.  Id.

Accordingly, the ALJ provided clear, specific and legitimate reasons for the weight she assigned to each opinion, specifically those of Drs. Feinberg and Tran.

    C.   The ALJ Properly Relied on the VE's Testimony in Making
         the Step Five Non-Disability Determination

Plaintiff's third assertion is that the ALJ's step five determination was flawed because the ALJ's hypothetical questions to the VE did not include a limitation on reaching, and that the VE's resulting testimony conflicted with the occupations listed in the DOT.

In her decision, the ALJ explained that she utilized the testimony of the VE, within the framework of the Medical-Vocational Guidelines, to determine that there were sedentary jobs existing in significant numbers in the national economy that Plaintiff could still perform, given her age, education, professional skills and RFC.  AR 709.  The ALJ determined that Plaintiff was capable of "sedentary work" as defined in 20 C.F.R. § 404.1567, which

United States District Court
For the Northern District of California

"involves lifting no more than ten pounds at a time and
occasionally lifting or carrying articles like docket files,
ledgers, and small tools."  AR 709; 20 C.F.R. § 404.1567(a).  The
ALJ also concluded that Plaintiff had no limitation in using her
left arm, but she had some functional limitation in her right arm
and would require an option to sit or stand.  AR 708.

The ALJ posed hypothetical questions to the VE that accounted
for all of Plaintiff's functional limitations.  The ALJ drew
directly from the medical evidence in formulating her questions,
specifically Dr. Feinberg's assessment that Plaintiff was precluded
from work above shoulder level with the right arm, should avoid
heavy lifting and could not perform repetitive functions with the
right arm; and Dr. Tran's opinion that Plaintiff could only
occasionally reach in all directions, including overhead.  The
ALJ's second question depicted a person who would only occasionally
be able to lift ten pounds or reach with the right arm.  AR 979-80.
Therefore, Plaintiff's argument is unavailing.  The ALJ's
hypothetical questions to the VE appropriately accounted for
Plaintiff's limitation on the use of her right arm, as well as
other limitations.

Plaintiff contends that the VE's answer to the ALJ's
hypothetical questions included two occupations, collections clerk
and credit authorizer, that require "frequent" reaching.  First,
Plaintiff argues that the VE contradicted the DOT regarding the
"occasional" reaching requirement of the collections clerk
occupation.  However, according to the DOT, the collections clerk
occupation requires only occasional reaching one-third of the time.

United States District Court
For the Northern District of California

DOT (2001) (241.357-010 Collection Clerk).

Second, Plaintiff disputes the ALJ's reliance on the VE's testimony regarding the occupation of credit authorizer.  The DOT indicates that this occupation may require frequent reaching one-third to two-thirds of the time.  DOT (249.367-022 Credit Authorizer).  However, as Defendant points out, this does not mean frequent reaching with both arms.  The purpose underlying the use of a VE is to assess variables that are not encompassed by the DOT. Barring an erroneous assessment of the occupation, determining whether this particular occupation requires reaching with one or both extremities is presumably the province of the VE.  Also, even excluding this one occupation, the remaining two occupations, telemarketer and collections clerk, account for 1,236,900 jobs in the national economy and 18,500 jobs in the local economy, which is sufficient to establish the availability of a "significant number" of jobs which Plaintiff can perform, given her limitations.  See Barker v. Sec. of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989) (finding that 1,266 local jobs constituted "significant numbers"); AR 980.

For the reasons described above, the Court finds that the ALJ's step five determination, that Plaintiff was capable of performing work that existed in the national economy, was properly supported by substantial medical evidence and the VE's testimony.

IV.  The ALJ Properly Considered Plaintiff's Alleged Medication Side Effects and Self-Reported Activity Limitations

Plaintiff argues that the ALJ misconstrued Plaintiff's self-reported activities of daily living and failed to consider the side

29

United States District Court
For the Northern District of California

effects from her medication in determining that she could perform sedentary work.  Both of these contentions are related to the ALJ's assessment that Plaintiff was not credible and that her statements were inconsistent with the other evidence in the record.  AR 705.

An individual's symptoms will be determined to diminish his or her capacity for basic work activities to the extent that the symptoms are reasonably consistent with the medical and other evidence, including the individual's daily activities, type and effects of any pain medication, and treatment and other measures used to relieve pain.  20 C.F.R. § 404.1529(a),(c)(3).  When assessing a claimant's subjective statements about symptoms and their functional effects, the "ALJ must make a finding as to the credibility of the claimant's statements." Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  A claimant's subjective statement regarding a symptom must be supported by objective medical evidence, generated by medically acceptable techniques, of an underlying impairment, "which could reasonably be expected to produce the . . . symptoms alleged."  42 U.S.C. § 423(d)(5)(A); Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).

Conversely, an ALJ may not disregard a claimant's subjective testimony about excess pain, "solely on the ground that it is not fully corroborated by objective medical findings." Cotton, 799 F.2d at 1407; Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Swenson v.

United States District Court
For the Northern District of California

<u>Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).  This means that "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."   <u>Id.</u>

In Plaintiff's case, the ALJ identified several specific instances in which Plaintiff's testimony was undermined by other evidence in the record.  The ALJ cited evidence to illustrate that Plaintiff's claims of frequent debilitating headaches were not consistent with her medical record.  AR 704.  In 2000, Plaintiff told evaluating physical therapist Peter Edgelow that, a year after her injury, her headaches had stopped and she had been relatively stable for the previous two years with the use of medication.  AR 624.  In 1997, Plaintiff reported that she was doing much better than the year prior.  AR 255.  Plaintiff's claim of complete disability was also inconsistent with her testimony that she was found only thirty-three and one-third percent disabled by Workers' Compensation.  AR 965-66.  Lastly, Dr. Adornato, who physically examined Plaintiff and viewed surveillance videotapes, noted inconsistencies between Plaintiff's presentation on examination and her daily functioning on the videotape.  AR 314.  For the foregoing reasons, the ALJ provided clear and convincing reasons for disputing Plaintiff's credibility.

The ALJ also provided a reasonable rationale for finding that Plaintiff's specific claim of "fuzzy headedness" was not entirely credible in light of her self-reported daily activities and the medical record.  AR 704.  The ALJ cited Plaintiff's testimony that she engaged in a wide range of daily activities that included walking an hour each day, grocery shopping once a week,

31

vacationing, watching movies, doing some laundry, and using the computer for ten to fifteen minutes a day.  AR 704.  Plaintiff's spouse, Mr. Coldiron, reported that Plaintiff walked, shopped, took care of financial matters, did some light cooking, read, and drove their children places.  AR 144, 705.  As discussed above, the ALJ noted that Plaintiff's medical records contained no evidence of functional limitations caused by mental impairment.  AR 703.  Thus, the ALJ provided clear and convincing reasons for giving little weight to Plaintiff's subjective complaint of "fuzzy headedness."

Plaintiff cites <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989), for the proposition that a person need not be "utterly incapacitated" to be found disabled.  But, where a plaintiff claiming disability is able to spend a substantial part of his or her day performing physical functions that are transferable to a work setting, an ALJ may properly discredit his or her allegations of complete inability to work.  <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999).  Further, if despite her claims of pain, a plaintiff "is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that [his or her] pain does not prevent [him or her] from working."  <u>Fair</u>, 885 F.2d at 603.

Although Plaintiff argues that the ALJ misconstrued her lifestyle as "active," the ALJ provided convincing reasons for determining that Plaintiff could perform sedentary activities.  AR 705.  The ALJ cited Plaintiff's direct testimony and Mr. Coldiron's statements about Plaintiff's lifestyle, as well the medical record

United States District Court
For the Northern District of California

describing Plaintiff's specific functional limitations.  AR 704-05.
The ALJ's determination that Plaintiff's activities of daily living
could be sufficiently applied to sedentary work activity was both
reasonable and consistent with the record.

Because the ALJ provided clear and convincing reasons for
finding that Plaintiff could perform jobs existing in significant
numbers in the national economy, Defendant did not err.

CONCLUSION

Because the ALJ properly applied the five-step analysis to
conclude that Plaintiff was not disabled, and for the more specific
reasons outlined above, Defendant did not commit reversible error.
The Court finds that the ALJ's decision that Plaintiff is not
disabled within the meaning of the SSA was supported by substantial
evidence in the record and was based upon proper legal standards.
Accordingly, Plaintiff's motion for summary judgment is DENIED and
Defendant's motion for summary judgment is GRANTED.  The Clerk
shall enter judgment accordingly and close the file.  Each party
shall bear his or her own costs.

IT IS SO ORDERED.

Dated:  3/28/08

_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

33